The next case on the call is agenda number 4, number 130461, the Village of Arlington Heights v. City of Rolling Meadows. Counsel for the appellant, are you prepared to speak? Yes, Your Honor. Good morning, and may it please the Court, Andriana Kostownik on behalf of the City of Rolling Meadows. This Court's precedent requires the Court overturn the decision below and hold that the complaint was properly dismissed by the Circuit Court. Five years ago, this Court held in the City of Chicago v. City of Kankakee that, subject to narrow exceptions not applicable here, the remedy for and jurisdiction over the misallocation of sales and use taxes lies exclusively with the Illinois Department of Revenue. The City of Chicago case is about as clear as can be. The General Assembly made IDOR responsible for the intertwined landscape of collection, audit, distribution, and reallocation of taxes in Illinois, except for as specified by the legislature in the statutory text. The Court got it exactly right in the City of Chicago. The question is one of pure statutory interpretation, whether when viewed as a whole, the legislature enacted a comprehensive statutory scheme under which it created rights and duties without counterpart in common law, and in so doing, conferred authority on the agency to resolve disputes that arise out of that statutory scheme. The clear answer to that is yes, there is a comprehensive statutory scheme here. It spans the State Finance Act, the Municipal Code, the Administrative Code, and the Revenue Law. That scheme gives Arlington Heights the right to receive sales taxes. There's no right to tax at common law. And in so doing, it gives IDOR, just by way of example, the power to levy sales and use taxes, to audit and correct returns, to issue rules and regulations, to conduct hearings, to conduct investigations, to audit returns, to distribute the sales and use taxes it distributes, I'm sorry, but it collects, to certify the amount of those disbursements, and most importantly, to correct misallocations. Also significantly, the statute dictates the limited remedies available to Arlington Heights in the event of misallocation. And I want to pause there and emphasize a portion of the City of Chicago opinion, paragraphs 43 and 44 at the end of the opinion. The court in City of Chicago held that other than what is specified by the General Assembly, a municipality has no cause of action in court other than what is specified for the missourcing or the misreporting of taxes. So here's the quote from the opinion. In order for the municipality to have a right to bring a cause of action in court about missourcing or misreporting of use taxes, the municipality must be given that right by the General Assembly. For the use taxes at issue in City of Chicago, there was no such cause of action specified, but it's even more clear for the sales taxes at issue here. There is a cause of action in court specified in the text. It applies only to unlawful rebate agreements post-2004. This case does not involve a post-2004 rebate agreement, much less an unlawful one. The clear conclusion is that the appellate court here got it wrong. There is a judicial cause of action. It's a very narrow one. It's not applicable here. This, of course, did not deprive Arlington Heights of a remedy. The statutory remedy selected by the General Assembly is a six-month look-back. So, six months' worth of reallocation from the time of discovery. Arlington Heights makes quite a big deal in its briefing about how unfair that is, how it results in a windfall to Rowan Meadows. But as Justice Odin-Johnson explained in her dissent below, that is a choice that the General Assembly made. It's a policy choice that's reflected in the statutory scheme, and it's not up for debate in these proceedings. And honestly, the six-month look-back operates no differently than any other statute of limitations or statute of repose in the General Assembly's work that it enacts every day of the week. So, it reflects the realities of municipal planning, that a municipal budget functions on a year-to-year basis. Funds are committed for the services of the residents of the municipality based on the income that comes in. And the six-month cap reflects the realities of how municipalities commit and allocate their funds. Arlington Heights has received that remedy. It's entitled to nothing more. Now, the Appellate Court departed from all of this analysis, and it recognized what it called a complexity exception. That complexity exception is wrong, for a few reasons. So, first, the Court explicitly rejected it in the City of Chicago. Paragraph 28, even if the task before the Court is one that Courts perform frequently, such as interpreting a contract that is not dispositive of whether the Court has jurisdiction. So, in other words, it doesn't matter that the facts in the City of Chicago were more complicated than the facts may be in this case. Rather, again, from the opinion, legislative intent to best jurisdiction in an administrative agency may be discerned by considering the statutory framework as a whole. Second, by its very nature, and as recognized by that passage I just quoted, jurisdiction does not depend on the complexity of a case. Subject matter jurisdiction is determined on a class-wide basis as to the genre of the case, and that's paragraph 22 of City of Chicago. Subject matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which that proceeding belongs. So, under your theory, then, the Village of Itasca case would be no longer good law? That is correct, Your Honor. But the Court in City of Chicago v. Kankakee did not find it so. So how do you explain that interplay, or how are we to look at the situation where the Supreme Court addressed City of Itasca but didn't overrule it? Well, Your Honor, City of Itasca, just to set the stage here, is an appellate court opinion. The City of Chicago, this Court in the City of Chicago opinion, said, we don't find City of Itasca to be persuasive. And one of the reasons why, and you're right, I didn't explicitly say we're overruling it, but it's also not a precedent of this Court, so I'm not sure that that would have been something that the Court said in its opinion. What it did say is City of Itasca predated J&J Ventures. And that's significant because City of Chicago was, I'm sorry, City of Itasca was based on the idea that there needed to be an explicit divestiture of jurisdiction in the statutory scheme. J&J Ventures held that that's not the rule. There doesn't need to be an explicit divestiture of jurisdiction. It can be reflected in the comprehensive statutory scheme that reflects that the legislature intended for the agency to exercise exclusive jurisdiction over an area. As this Court held in City of Chicago, the comprehensive statutory scheme with regards to tax vests that jurisdiction in IOR. So what you're speaking about is the interpretation of paragraph 27 in the City of Chicago? Yes, Your Honor. And actually the language that the Court used was that that case does not inform our decision here.  Now, perhaps I'm the only one here that can say this, but perhaps that was not very precise language or it was not fully drawn. Because then the opinion goes on to say that the Itasca case finds specifically that the legislature's divestment of the circuit court jurisdiction must be explicit. And of course goes on to say in talking about the holding in Itasca that under J&J Ventures, the Court clarified that the absence of an explicit divestiture of the circuit court's jurisdiction is not dispositive. It appears that what the Court was saying in paragraph 27 was that the village of Itasca was wrong. That it's finding that there has to be an explicit statement in the statute is no longer correct. As I say, maybe one person can criticize the writing here. Should village of Itasca be overruled now? I do think so, Your Honor, and I think that is what I was trying to express is that City of Itasca is not good law post J&J Ventures. It was based on the idea that there needed to be explicit divestiture and J&J Ventures and this Court in J&J Ventures said that that is not the proper rule. So whether this Court needs to go the step of overturning a lower court decision explicitly is within your purview, but the fact of the matter is it's an appellate court decision. It's not binding on this Court. And it predates J&J Ventures, so I don't think it should hold any sway in the way that this Court thinks about the issues before today. I would also point out that going back to the complexity exception and whether the City of Itasca's focus on complexity and the lower court's focus on complexity should matter is that bright line rules in this context are very important. There's no principle in jurisdictional law that's better established than that rules should be clear and easy to understand, bright lines, and that's especially true in the municipal context. There are many people working for municipalities that are not lawyers. It's important to have clear rules to help guide their conduct and the same is true for the individuals who work at the IDOR. Clear rules to guide the conduct as to the remedies available and the causes of action that are available. Another reason that I think that the City of Chicago opinion clearly forecloses the complexity exception is that if Arlington Rights was right that complexity mattered, that City of Chicago opinion would look very different. It wouldn't have engaged in an evaluation of the statute as a whole. The statute, none of the statutory provisions that are issued here, distinguish between cases based on complexity. And paragraph 44 that I highlighted earlier would not have said what it said. So paragraph 44 says there is no cause of action for a use tax misallocation period. It wouldn't have said that if complexity mattered. It would have recognized that there could be a judicial cause of action for use tax misallocation sometimes. But it didn't say that. And the same thing is true of this court's opinion in J&J Ventures where this court held that the gaming board has exclusive jurisdiction over the video gaming industry regardless of the complexity of the dispute. Also no distinction in that case based on the difficulty of the issues that are presented to the agency or the court. The conclusion in J&J Ventures, just like the conclusion in City of Chicago, was driven by that comprehensive statutory scheme, the legislative intent to best jurisdiction in the agency, and the statutory creation of limited rights and limited remedies. In the end, Arlington Heights really seeks an end-runaround, this statutory scheme. And it's an end-runaround that I think is primarily designed to avoid the limited remedies that are available to it under that scheme. In their response brief, they focus on Section 12, and they may do so in their argument here today, that Section 12 provides judicial review. But Section 12, of course, is review under the Administrative Review Law. So that would have looked very different from the cause of action for unjust enrichment and conversion that they brought in the circuit court. Instead of Rolling Meadows as a defendant, Ivor would have been a defendant. They would have needed to file within 35 days pursuant to the Administrative Review Law. And review by the circuit court would have been constrained to, did the IDOR properly apply its rules? Did it act arbitrarily and capriciously? And that's not at all what their lawsuit against Rolling Meadows in the circuit court looked like, where they seek a full look-back for all of the years of misallocation. If there are no further questions from the court, we would ask that you reverse the decision below and dismiss the complaint. Thank you very much. Thank you, Your Honors. Good morning. May it please the Court. Hart Passman, the law firm of L. Ron Friedman, on behalf of the Village of Arlington Heights. Your Honors, Rolling Meadows is holding nearly $1.2 million of the Village of Arlington Heights money. Arlington Heights asked for it back. And after Rolling Meadows refused, the Village filed a run-of-the-mill complaint for declaratory judgment, unjust enrichment, and conversion. These are justiciable matters. And under our state constitution, the default rule is that the circuit court has subject matter jurisdiction over justiciable matters. What Rolling Meadows is asking you to do is not to stick with your precedent in Chicago v. Kentucky, but to expand it vastly to all matters that concern sales taxes in any way, in any matter. Counsel, can the legislature make a rule in which they give exclusive jurisdiction to the Department of Revenue in sales tax interest matters, in the matters of sales tax, on anything? The legislature could do that, Your Honor. Well, did they do that in this case? They did not, Your Honor. Why not? Tell me what you rely on to say they didn't. Your opponent relies on the statutory section as cited in her brief. Tell me what you rely on to say that the legislature doesn't have the power to do that or didn't do that in this case. Absolutely, Your Honor. I'll start with the same Chicago v. Kentucky case. This court characterized the divestiture as being regarding the levy assessment and collection of sales tax revenues. That's not what this case is. This is not a case about those issues. This is an unjust enrichment and conversion case that happens to be about a check or a series of checks written for sales tax revenues. These are common law remedies. If the legislature intended to make these six-month true-up provisions to be exclusive, according to this court's precedent in Kosicki v. S. A. Healy Company and Nottage v. JICA, the legislature has to have negative words for other provisions making it exclusive. And if not, and I'd point the court particularly to Kosicki, if the legislature doesn't do it, then this court has held those common law remedies carry on. Remedies are cumulative, not exclusive. In this case, there is no statute of any kind that divests the circuit courts of jurisdiction over these unjust enrichment and conversion cases. It also would be an absurd and unjust result to do so. Their position contravenes this court's precedent, contravenes statute, and gives an unjust result, which we know is not what we presume the legislature intended. Your Honor, this court's precedence regarding subject matter of jurisdiction come largely not only from Chicago v. Kankakee, but also J&J Ventures and Zahn v. North American Power and Gas. As counsel noted, we can look at the overall statutory framework to determine if there was an implicit legislative intent to divest subject matter of jurisdiction. The parties agree there is no explicit statement anywhere in statute. The Zahn case is particularly illuminating. Zahn was a case in which the court analyzed whether jurisdiction existed in the judiciary to review a claim that an alternative retail supplier, retail energy supplier, overcharged a customer. And there was a debate about whether a divestiture that related to public utilities, which is explicit in the Public Utilities Act, also applied to an alternative supplier. Now this court said in Zahn at paragraph 20 that the Commerce Commission's technical and regulatory expertise does not come into play. Therefore, there was no justification for exclusive agency jurisdiction. This court used similar language in Chicago v. Kankakee noting at paragraph 39 that in that case the Department of Revenue has the resources and by extension the expertise to conduct the audit that was needed to give the city of Chicago its public utilities out of revenue. We are not seeking a quote complexity exception and the appellate court didn't advance that. Rather, the appellate court's opinion below reflects this court's precedent. If we want to identify what the legislative intent was given that there's no explicit divestiture we look, perhaps as a key factor, do we need the expertise of the agency? If not, that's a pretty strong indicator that we don't have exclusive agency jurisdiction, that the matter in front of the courts is one the courts can perform. And so if we apply that both to Chicago v. Kankakee and to our case, and if we contrast those two cases particularly, we see tremendous differences. And this gets to your question Justice Cunningham, why what they're advocating doesn't apply. As I know the court knows, Chicago v. Kankakee had this very technical set of questions. The court didn't know what type of tax was at issue? What should have been applied to the transactions in question, a use tax or sales tax? What was the situs of each of those thousands of transactions that the court noted? How would the court handle unwinding all of that given this court's opinion in the Hartley case? How would it handle all of that given that dozens, hundreds of parties that would get a use tax distribution were not parties to the Chicago v. Kankakee case? We don't have any of those issues. There's no debate about situs. The Cooper's Hawk restaurant is in Arlington Heights. There's no debate about the type of tax. It was sales tax. There's no debate about whose money this is. It's Arlington Heights money. Counsel, what about this argument that the six-month look-back period is akin to statute of limitations or statute of imposed? Your Honor, I appreciate that. That's incorrect. Counsel made that argument again here this morning. There's a few places where the six-month offset appears. This court noted it in Kankakee, in Chicago v. Kankakee, in section 811.16 of the municipal codes. I'll use that statutory reference as shorthand. The six-month offsets don't mention the parties or the municipalities at all. They only refer to the Department of Revenue. It says the Department of Revenue provides the six-month offset. It's silent about anything else. I would contrast that with language in what we know to be our statute of limitations provisions. If we look at the limitations division of the Code of Civil Procedure, for example, those provisions have language on the lines of, no action shall be commenced more than so many years after the injury. Wait a minute. So are you saying that if the period is more than six months, according to the statutory language, only six months can be sought through that provision, and then anything outside of that goes to the circuit court? Is that what you're arguing? Yes, Your Honor. These are cumulative remedies, as we find from Kosicki and from Nottage. The statute in question, section 811.16 of the municipal code, for example, tells the Department of Revenue what it does and says nothing about the municipalities in question. And it does not to Justice Overstreet's question. It does not have language that looks like a statute of limitations at all. It's not one. It's not a limitation on, in this case, the village of Arlington Heights. And under Kosicki and Nottage, our common law remedies carry on because there is no explicit language or even implicit language in statute that shows the six-month remedy to be exclusive and to replace the common law remedies. And so you continue to believe that the only time this shift of who has jurisdiction is if it's explicit in the statute? No, Your Honor. It can be implicit. This Court's made that clear in J&J Ventures and in Zahn and in Chicago. But there is no legislative intent that we can divine from the statutes in this case. There's no indication that our unjust enrichment and conversion actions are somehow gone because the checks in question are sales tax revenues. Where in statute? They don't point to that anywhere. If this were a case about any other type of revenue, we would not be here today. So could you focus for a moment on how you distinguish the City of Chicago case? Is that part of it? It is part of it. The difference between sales tax and use tax? Is that the distinction? Or exactly how do you look at the City of Chicago case? A few different ways, Your Honor. One is that that case involved the levy assessment and collection of taxes. This does not. This is an unjust enrichment case. The check was sent to the wrong City Hall. We're asking for our money back. It just happens to have been a sales tax revenue check. IDOR is not involved in this at all. We don't need their expertise. We don't need their insight. We don't need to determine what tax it is. We know. We know exactly what should have happened. And they have done everything that they are authorized to do. And we know that administrative agencies can only act as they are authorized. So is it this complexity argument that you're saying the difference between the City of Chicago seems to be looking at how should a court interpret these different statutes? Spread over a number of different acts. Are you suggesting that that case, the distinction between that case of the City of Chicago and here, is the complexity of the issues here? It's not specifically complexity, Your Honor. But again, looking back at Zahn and looking at Chicago, it's whether we need the expertise of the agency. Whether the agency's resources are necessary to... Or is it statutory interpretation? What did the legislature intend? Correct. I agree with that, Your Honor. There is no statute that covers a case like this. There is no other case like this one here. The only case that I think IDOR Party can find that involves a sales tax allocation dispute is Itasca. It's what you're saying that when you say we don't need the agency's expertise, you already have the agency's expertise. There's already been a ruling. Nobody's disputing that this was improperly classified as being within Rolling Meadows. It should have been under the Heights. There's no dispute about the amount of money, but that the department is only authorized to go back six months. And at that point, there is no need for any redetermination or any audit or anything. This is now just between you and Rolling Meadows, and it's in the nature of either collection or, like you said, something that doesn't involve the department any further because you have their ruling and don't need... You're not disputing the ruling in terms of how it was calculated or correct? Your Honor, yes. Correct. We don't need them for anything further. I wouldn't even go so far as to classify what they did as a ruling. There was not an adverse proceeding. The attachments to the complaint indicate that when the Village of Arlington Heights identified the problem, it notified the Department of Revenue, and they fixed it. That was it. And the reason why it was so simple is it was simple. Cooper's Hawk is in Arlington Heights. The money should go to Arlington Heights. So going forward, where does the money get allocated? That took no expertise. It didn't take expertise then. It didn't take expertise now. The only question left is why does Rolling Meadows get to keep this money that they themselves know was never theirs to begin with? That's important to point out throughout this litigation. Understandably, they don't claim it's their money. They don't claim they should have received the checks. They say nobody can even look under the hood and find out why. They say that because this check was a sales tax check, they are outside everybody's jurisdiction. The courts, Department of Revenue, the Village of Arlington Heights. That's absurd. Counsel, I think your opponent made a reference to Section 811.21 of the Municipal Code. How does that case, or that statute, apply in our analysis, if at all? Your Honor, we haven't talked about it because it does come up in Chicago, but the way that Rolling Meadows has interpreted the Chicago discussion of that case and the statute itself doesn't make any sense. And the appellate court got this right. They got this exactly right. 811.21 is not a grant of authority or a grant of jurisdiction where otherwise none exists. 811.21 and specifically subsection A, that's the provision in question, 811.21A of the Municipal Code prohibits a certain type of rebate agreement. And, importantly, what it does is it defines the parties to an action concerning an allegedly improper rebate agreement. That's all it does. Specifically, it says if a municipality believes that its neighbor entered into a wrongful rebate agreement, the plaintiff sues only the municipality, not the retailer. That's it. I should point out, there's no mention in 811.21A of misallocations of the Department of Revenue. It's not there. It doesn't concern these matters at all. And as the appellate court recognized, we don't need a grant of authority for us to bring a common law claim for unjust enrichment and conversion. Those exist at common law, and as I noted earlier, there is no statement anywhere in statute that the legislature intended to make the six-month offset exclusive. I want to come to a different part of the Municipal Code, if I can, Your Honor, and it gets back to what I was saying a moment ago about the unjust nature of their proffered remedy. The statute, and specifically 811.16, sets forth a series of certification and reporting requirements that municipalities must engage in with the Department of Revenue. The Department of Revenue sends periodic reports. The municipality must forward changes and corrections if they spot them. If their position is correct, then that process is meaningless. We've eviscerated it. Because the six-month true-up applies no matter the reason for the misallocation, whether an innocent mistake, a failure to respond, as is alleged here, or perhaps a deliberate misleading of the Department of Revenue. If this court finds that there is no subject matter jurisdiction for these unjust enrichment and conversion cases, every municipality across the state will, at best, sit on those reports and do nothing. Because they benefit if no one catches the problem. The moment we get past six months, six months and a day, they get a windfall, money that's not theirs. The statutes also say that sales tax share goes to the municipality where the sale happened. So you want a statement of legislative intent, there's one. This money is ours. And now we're rewarding municipalities under their interpretation. Counsel, can you remind me what your response was to Justice Overstreet's question regarding whether the six-month limitation period, whether it can be viewed as a statute of limitations. Because with a statute of limitations, often somebody's out of luck because the time to file is over. It doesn't mean they wouldn't be entitled to the damages if the time wasn't passed. But it's passed. That's what statutes do. So how do you respond to that argument that the six-month limitation is akin to a statute of limitations? My answer is twofold, Your Honor. First is that it doesn't have any language that looks like a statute of limitations. There's no reference to an action at all. That word doesn't appear in the six-month offset provisions. And also, those statutes don't refer to the parties to the misallocation at all. They are strictly a directive to the Department of Revenue to true up the prior six months' worth of sales taxes. So there's not... Compare it to statute of limitations. I looked first at the Code of Civil Procedure. That's perhaps the most obvious place. Those statutes refer to actions being commenced or not being commenced. That language isn't present. And again, to interpret it as a statute of limitations yields an absurd result, and it's inconsistent with Kosicki and Nottage. Okay, another question. What would you say to the suggestion that perhaps this requires a legislative fix, so the legislature recognizing that they have the power to impose obligations and restrictions on the Department of Revenue and how they manage that. Would a legislative amendment of the language, the six-month language, fix the problem? Is this a legislative language problem? No, Your Honor. I don't believe it's a problem. I don't believe there's a problem at all. There's no problem with the statute. There's a problem with how Rolling Meadows interprets it. Because this is not a statute of limitations. Because the six-month offset that is directed to the Department of Revenue is not exclusive. We have a cumulative remedy here. So, a follow-up question. I asked this before, but I didn't get an answer that I understand. So, in your view, whenever the amount that's owed extends beyond six months, the six-month period applies, they give you six months, you get six months back, and then you have to file a lawsuit in the circuit court to get the rest, unless the parties voluntarily give it to you? Is that your argument? That is, Your Honor. And I want to see it on the end of your question there, unless the parties have worked it out. I've practiced municipal law for almost 20 years. I've never seen a case like this. We talked in an oral argument in the appellate court about why these cases don't exist, and I said to the appellate court, and I'll say it again here, it's because municipalities are doing the right thing. We know these misallocations happen. That's why some of these statutes exist. Is there a mechanism by which Arlington Heights could have detected this, and what is the responsibility of the two municipalities with respect to this type of thing? Your Honor, possibly. That's a great question for discovery. We haven't gotten there yet, because this came up on a motion to dismiss. But that requires the court to have subject matter jurisdiction. I see my time's up, and I conclude. You may answer the question. Complete your answer. Your Honor, if the court has subject matter jurisdiction, then we can get into that question. We can determine why this happened, if that matters, and what that ultimately means for any award of the village's money back to it. But if there is no subject matter jurisdiction, then they get this windfall, and other municipalities will start doing exactly as they did, and that's just unjust. Thank you, Your Honor. Appreciate your time. Thank you. Counsel will reply.  I would like to start, Your Honor, with the fundamental incompatibility between Arlington Heights' argument and the City of Chicago case. One of their arguments as to why City of Chicago doesn't govern here... Counsel, I want to go in a different direction. What about your opponent's argument about the equitable... What about his equitable argument that this is clearly unjust enrichment, and Rolling Meadows is well aware that they are not entitled to that money, so the reason that cases like this never come before the court is because the party is in recognition of getting a windfall that, as your opponent puts it, that they're not entitled to. We'll sit down and work it out. What's your response to that? A few responses, Your Honor, and thank you for the question. I think it's an important issue because it obviously flows through the entirety of Arlington Heights' argument, and I think it animated the decision below wrongly so. So, first, the equities don't answer the question before this court, which is a jurisdictional question. The legislature intended for the IDOR to have the power to adjudicate these issues, subject to the restrictions that were put in place. But if, Your Honor, you do entertain the equities, I have a couple of additional responses. One is that there is nothing inequitable about saying that the IDOR, as opposed to courts, adjudicate the disputes. The real issue that is being expressed is about the limitation of the remedy. They think it's unfair to be limited to the six-month allocation per statute, right? They want to be able to bring an unjust enrichment claim. That is exactly what happened in the City of Chicago case. So, Arlington Heights says, this case is not City of Chicago because this is unjust enrichment. Wait a minute. Was there a hearing before the Department of Revenue regarding this, or was there just a request, and then it was corrected, and the $109,000 was then refunded? How did that unfold? I'm not sure if there was a hearing or not, but the course of... You keep talking about litigating, and in that sense, I keep thinking it brings to mind a hearing that's where the parties are in conflict before the Department of Revenue. Did that happen in this case? Yes, Your Honor, yes. So, the Department's correspondence to the parties that reflected their decision, the IDOR's decision, and the limitations of that decision is at C-19 of the record below, and when the parties went to IDOR to try to obtain the full reallocation of the amount that's in dispute, IDOR cited the 6Z-18 provision that limits the lookback to six months. The IDOR, and this is responsive to one of Your Honor's questions to my colleague, IDOR also explained, here are the mechanisms by which Arlington Heights could have detected this. So, it laid out in a full, single-spaced, two-page letter the protections that are in place and explained that those protections are there to incentivize municipalities to ensure that they are getting the tax revenue to which they are due. It explained that there's an enhanced process, I believe that they're digitizing it to ensure that that process is easier for municipalities, but that under statute, they are limited, the IDOR is limited to that six-month lookback. Is there also a mechanism by which Rolling Meadows could detect that they were getting monies that they weren't entitled to? Possibly. I'm not sure that that is in the record, Your Honor, so I can't speak to it. Don't they get a list every month? Didn't the village of Rolling Meadows get a list every month? I think that that's right, Your Honor. Again, I'm not sure that it's in the record exactly how the notification happens, but I do think that both municipalities get a list by which they can compare it to the entities or the businesses from which they are supposed to be getting revenue. Now, this is... I have one last question. Truly, this is really my last question. How do you respond to your opponent's argument that if this is allowed to stand, other municipalities can either intentionally or inadvertently enrich themselves with tax revenues that they either know or should know just don't belong to them? How do you get around that? Yes, Your Honor, I recognize the concern. I would first note that that certainly is not the case here. There's no allegation of fraudulent concealment. There's no indication that it's not. No, he didn't say that. He just said that the money doesn't belong to Rolling Meadows, and Rolling Meadows knows that. And if we allow Rolling Meadows to keep the money that everybody agrees doesn't belong to Rolling Meadows, what's to stop other municipalities from doing the same thing either intentionally or inadvertently? Here's what's to stop it. A legislative fix. City of Chicago had exactly the same problem, and it's very important to recognize that City of Chicago also involved an unjust enrichment claim. Arlington Heights focused in its argument that this is unjust enrichment. City of Chicago was. That is incorrect. The causes of action in City of Chicago were exactly the same as they were here, unjust enrichment. There was a request for a constructive trust. The allegation was conversion, and this court said we don't have. Courts do not have the power to adjudicate those claims. Those are common law claims that have been displaced by the statutory regime in place. Now, if the legislature thinks that the six-month lookback is unfair, they can amend it. And very importantly, there was a bill to amend that six-month lookback provision. I believe it's HB 4081. It was introduced in 2023. It would have explicitly said explicitly said that the six-month lookback is not an exclusive remedy. That's the relief that Arlington Heights wants. It is dead as of January 8, 2025. In other words, one week ago today, that bill died. The General Assembly chose not to amend its provisions to do what Arlington Heights is asking this court to do, and that's important because it demonstrates not only that the fix is with the legislature and not with the courts, but also that the General Assembly doesn't see a problem with the language of this statute or with the court's decision in the City of Chicago vesting that authority in the IDOR instead of the courts. That's very, very significant. I also would like to address Your Honor's questions about Section 21, the judicial cause of action. There's just, again, a fundamental incompatibility between Arlington Heights interpretation of that provision and the way that this court interpreted it in the City of Chicago. That provision says, on or after June 1, 2004, a municipality shall not enter into any agreement to share any portion of retailers' occupational taxes generated by retail sales. Any unit of government denied retailers' occupation tax revenue because of an agreement that violates the section, which isn't at issue here, that's established by affidavit below that was then contested, may file an action in circuit court only against the municipality. Now, Arlington Heights says, well, that just specifies the parties. It's not exclusive. This court in the City of Chicago, again, Paragraph 44 said otherwise. It said the legislature intended to only make a judicial cause of action available under the circumstances that were specified in Section 21 that doesn't include a cause of action for circumstances that are not specified in that provision. Express the obedience. It's standard statutory interpretation and we would ask that this court adhere to its decision and hold that the circuit court did not have jurisdiction and that's how the court here got it wrong. Thank you, Your Honor. Thank you very much. Agenda number 4, number 130461, the village of Arlington Heights versus the City of Raleigh Meadows. This case will be taken under advisement. Thank you both for your arguments.